

**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE FOR CIVIL RIGHTS
61 FORSYTH STREET, SW
SUITE 19T70
ATLANTA, GEORGIA  30303
TELEPHONE: (404) 562-6350

**FAX:** (404) 562-6455
**TDD:** (404) 562-6454

**Email: Atlanta_ocr@ed.gov**

OCT 2 8 2004

Ms. Cassandra Williams
6812 Briar Gate Court
Montgomery, Alabama  36116

Dear Ms. Williams:

Re:      Complaint #04-04-1296

The U.S. Department of Education (Department), Office for Civil Rights (OCR), has completed its investigation of your complaint, cited above, filed against the Montgomery County School District (District) alleging discrimination on the bases of disability and race.   As a recipient of Federal financial assistance from the Department, the District is subject to the provisions of Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. Section 794, and its implementing regulation, 34 C.F.R. Part 104, prohibiting discrimination on the basis of disability; and Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C. Sections 2000d-d6, and its implementing regulation, 34 C.F.R. Part 100, prohibiting discrimination on the basis of race, national origin, or color.  As a public entity, the District is subject to Title II of the Americans with Disabilities Act of 1990 (Title II), 42 U.S.C. Sections 12131-12165, and its implementing regulation, 28 C.F.R. Part 35, prohibiting discrimination on the basis of disability.   Accordingly, OCR has jurisdiction over this complaint.

You (Complainant) alleged that the District discriminated against your son, Brian Williams (Student), enrolled at Lanier High School (LHS) during the 2003-2004 school year and identified by the District as specific learning disabled (SLD).    Specifically, the Complainant alleged that the District:

1.      Failed to properly evaluate the Student for assistive technology.

2.      Failed to include a District representative knowledgeable about SLD placement options at the Student's placement meeting.

3.      Coerced the Complainant into putting the Student in the Homebound Program and failed to place the Student in the appropriate educational setting in January 2004.

Ms. Cassandra Williams
Page 2

4.   Failed to provide the Student with an individualized education program (IEP) tailored to meet his individual needs with respect to the homebound placement by: (a) failing to provide sufficient instructional hours and Social Skills training; (b) failed to provide instruction in mathematics; (c) requiring the parent to provide instructional services; (d) failing to monitor and communicate with the parents about the Student's progress; and (e) failing to provide related services (therapeutic recreation and leisure in schools and community; and counseling services).

5.   Failed to provide the Complainant with required parental training.

6.   Failed to provide the Complainant with a response to her complaint about special education services available at Lee High School, and failed to inform the Complainant about OCR and other options for filing a grievance or complaint.

7.   Failed to issue a prior written notice of intent regarding placement at Lee High School and providing the Student with a free appropriate public education (FAPE).

8.   Failed to provide the Student and other black students with access to the self-contained SLD program at Lee High School, which is provided to white students, resulting in different treatment of students based on race.

9.   Retaliated against the Student after the Complainant filed a complaint by losing the Student's completed work assignments and providing the Complainant with false reports about her request for placement at Lee High School.

During the investigation, OCR conducted an on-site investigation on August 23-25, 2004, and reviewed documents provided by the Complainant and the District. OCR also interviewed the Complainant and District staff. Based on the evidence obtained, OCR found noncompliance with the Section 504 and Title II regulations regarding implementation of the Student's IEP for the homebound setting, i.e., Social Skills instruction and mathematics instruction. Regarding the remaining allegations, OCR found insufficient evidence to support a violation of the Section 504, Title II, and Title VI regulations. OCR's factual findings are summarized below:

**Regulatory Standards**

The Section 504 regulation provides at 34 C.F.R. Section 104.33 (b) that the provision of an appropriate education is the provision of regular or special education and related aids and services that (i) are designed to meet the individual educational needs of persons with disabilities as adequately as the needs of persons without disabilities are met and (ii) are based upon adherence to procedures that satisfy the requirements of Parts 104.34, 104.35, and 104.36 related to educational setting, evaluation and placement, and procedural

Ms. Cassandra Williams
Page 3

safeguards.    Title II and its implementing regulation are interpreted consistently with
the standards set forth in the regulation implementing Section 504 in this regard.

The regulation implementing Section 504 at Appendix A, Subpart D at 34 C.F.R. Section
104.33 provides that it is not the intention of the Department, except in extraordinary
circumstances, to review the result of individual placement and other educational
decision, so long as the district complies with the "process" requirements of the
regulation.    The requirements relate to identification and location, evaluation, and due
process procedures.

The Section 504 regulation at 34 C.F.R. Section 104.35(a) states that a recipient
operating a public elementary or secondary education program or activity shall conduct
an evaluation in accordance with the requirements of the regulation.    The Section 504
regulation at 34 C.F.R. 104.35(c) states that in making placement decisions, a recipient
shall (1) draw upon information from a variety of sources, including aptitude and
achievement tests, teacher recommendations, physical condition, social or cultural
background, and adaptive behavior, (2) establish procedures to ensure that information
obtained from all such sources is documented and carefully considered, (3) ensure that
the placement decision is made by a group of knowledgeable persons, including persons
knowledgeable about the child, the meaning of the evaluation data, and the placement
options, and (4) ensure that the placement decision is made in conformity with Part
104.34 with respect to educational setting.

The Section 504 regulation at 34 C.F.R. Section 104.36 provides that a recipient
operating a public elementary and secondary education program or activity shall establish
and implement with, respect to actions regarding identification, evaluation, or educational
placement of persons who, because of a disability need or are believed to need special
instruction or services, a system of procedural safeguards that includes notice, an
opportunity for the parents or guardian of the person to examine relevant records, an
impartial hearing with opportunity for participation by the person's parents or guardian
and representation by counsel, and a review procedure.    Title II is interpreted consistently
with the standards set forth in the regulation implementing Section 504 in this regard.

The Title VI regulation at 34 C.F.R. Section 100.3(a) provides that no person shall, on the
ground of race, color, or national origin be excluded from participation in, be denied the
benefits of, or be otherwise subjected to discrimination under any program to which the
regulation applies.    The regulation also states at 34 C.F.R. Section 100.3(b)(1)(iii) that a
recipient may not, on the ground of race, color or national origin, subject an individual to
segregation or separate treatment in any matter related to his receipt of any service,
financial aid, or other benefit under the program.

The Section 504 regulation at 34 C.F.R. Section 104.61 incorporates by reference the
procedural provisions of the Title VI regulation, which provides at 34 C.F.R. Section
100.7(e) that no recipient or other persons shall intimidate, threaten, coerce, or
discriminate against any individual for the purpose of interfering with any right or
privilege secured by the Act.    A person may not be retaliated against because he has

Ms. Cassandra Williams
Page 4

Exhibit: OCR-04-04-1296

made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing. In order to determine whether retaliation has occurred, OCR must establish whether: (1) the has participated in a protected activity; (2) whether the recipient had knowledge of the protected activity; (3) whether adverse action was taken against the Complainant; (4) whether there is a causal connection between the adverse action and the protected activity. OCR's findings with respect to the Complainant's allegations are as follows:

**Allegation 1**

The Complainant alleged that the District failed to evaluate the Student for assistive technology.

**Findings of Fact**

At the time of the investigation, the Student was 16 years old, enrolled in the 10th grade at LHS, and pursuing a regular diploma. The Complainant stated that the Student has been diagnosed with SLD and three other personality or psychological disorders. The Student is classified by the District as SLD with a weakness in written expression.

Evidence shows that the Complainant requested an evaluation for assistive technology on March 11, 2004. On March 19, 2004, she requested a complete evaluation, a receptive and expressive language evaluation, a dyslexia evaluation, an assistive technology evaluation and assistive technology. She specifically requested a Brainchild handheld computer and software to help the Student reach grade level.

In a letter dated April 6, 2004, the Director of Special Education advised the Complainant that the evaluations would be conducted to address additional academic, language and assistive technology concerns, and that a Brain Child computer was available at LHS for the Student to work with during the school day. OCR found that at the time of its on-site investigation, the District had not conducted the assistive technology assessment because the assistive technology consultant had repeatedly attempted to contact the Complainant but was unsuccessful. Furthermore, the request for testing was received late in the school year (spring of 2004) and school ended on May 18, 2004. According to District staff, the Complainant became increasingly difficult to communicate with and was hostile to District staff.

District representatives stated that the District follows Alabama Department of Education guidelines in implementing the Section 504 regulation with respect to the provision of services to students who are identified as special education students. With respect to timeliness of evaluations, the guidelines provide 60 days from the date of referral to the eligibility determination. District staff stated that they attempt to complete evaluations within 30 days, and certainly within 60 days. The District stated that as late as June 2004, the Assistive Technology Consultant was still attempting, unsuccessfully, to contact the Complainant.

Ms. Cassandra Williams
Page 5

*Exhibit: OCR - 04 - 04 - 1296*

The Complainant provided no evidence that the District denied the Student an assistive technology assessment. Moreover the District reported to OCR that the Student has been evaluated for assistive technology. The Complainant confirmed that the consent for evaluation was signed on September 14, 2004, and that the assistive technology assessment was conducted on the same day.

**Conclusion**

OCR has determined that the evidence is insufficient to establish that the District is in noncompliance with the regulations with respect to the provision of an assistive technology evaluation.

**Allegation 2**

The Complainant alleged that the District failed to provide a local education agency (LEA) representative knowledgeable about placement options for the Student's placement meeting.

**Findings of Fact**

The Complainant stated that the LHS assistant principal, who served as LEA Representative during the 2003-2004 school year, was unqualified because he sometimes consulted with the District's special education office before making a decision. District policy requires that a qualified LEA representative attend all IEP meetings. The District defines a qualified LEA representative as someone who is qualified to provide or supervise the provision of specially designed instruction, has knowledge of the general curriculum and District resources, and is authorized to commit resources. The regulation implementing Section 504 requires only that placement decisions be made by persons knowledgeable about the student and the evaluation data.

The evidence stated that the assistant principal has received training in special education, is qualified in his role as a LEA representative, and attended the Student's IEP meetings. Evidence also indicates that he is knowledgeable in the special education area, and the District has received no other complaints regarding his services as LEA representative. The fact that the LEA representative consults with the District special education office before making decisions is not an indication that he does not meet the required qualifications.

**Conclusion**

OCR found insufficient evidence to establish that the District is in noncompliance with the regulations with respect to the provision of a qualified LEA representative at IEP meetings.

**Allegation 3**

Ms. Cassandra Williams
Page 6

*Exhibit: OCR-04-04-1296*

The Complainant alleged that the District coerced and intimidated her into putting the Student in the Homebound Program and failed to place the Student in an appropriate educational setting.

**Findings of Fact**

District staff stated that the IEP committee determines whether a special education student receives homebound services. On January 22, 2004, the IEP committee, including the Complainant, made the decision to place the student in the Homebound Program. The Complainant could not explain how the District made her feel coerced or intimidated. She stated, however, that District staff misrepresented facts in order to avoid providing services to the Student. She stated that a District administrator suggested homebound placement and that she agreed to the homebound placement.

The Complainant stated the District had not told her about the self-contained SLD class at Lee High School. District staff involved in the Student's placement stated that they were aware of no self-contained class at Lee High School and that programs are the same at all high schools. OCR confirmed that there was a one-period Reading resource class at Lee High School composed of students who were classified or viewed as SLD during the 2003-2004 school year; however, there was no self-contained SLD class at Lee High School.

The evidence confirms that the District discussed with the Complainant placement options and that she agreed to the placement of the Student in the Homebound Program. OCR found no evidence that the District withheld information from the Complainant or otherwise attempted to coerce her into the homebound placement.

**Conclusion**

OCR has determined that there is insufficient evidence to establish that the District is in noncompliance with the regulations with respect to coercing the Complainant to place the Student in the Homebound Program.

**Allegation 4**

The Complainant alleged that the District failed to provide the Student with an IEP designed to meet his individual needs in the homebound placement. Specifically, the Complainant alleged that after the Student's placement was changed to the Homebound Program, (a) the District failed to provide him with instruction in Social Skills, (b) the District failed to provide appropriate instruction in mathematics in the Homebound Program, (c) she was forced to perform instructional tasks that are the job of the homebound teacher, (d) the District failed to monitor the Student's IEP and to communicate with her about his progress, and (e) the District failed to provide the Student with related services, i.e., therapeutic recreation, community, and counseling services.

Ms. Cassandra Williams
Page 7

Exhibit: OCR-04-04-1296

a.    **Failed to Provide Sufficient Instructional Hours and Social Skills Training**

The Complainant alleged that after the Student's placement was changed to the
Homebound Program, the District failed to provide him with instruction in Social Skills.
The Complainant stated that the District provided the Student with a program that
provides for only three hours per week of instructional services, and failed to provide him
with services that met his individual needs, e.g., transition services for vocational
education.

**Findings of Fact**

District staff stated that it is customary to prepare an IEP addendum for students with
disabilities who are placed in the Homebound Program, and the IEP committee
developed an Addendum to the Student's 2003-2004 IEP on January 22, 2004. The
Addendum called for the Student's existing IEP to be implemented in the Homebound
Program. The Student's IEP for the 2003-2004 school year provided that he receive full
instructional services and Social Skills training. On January 22, 2004, the IEP committee,
which included the Complainant, the case manager, the general education teacher, the
LEA representative and the Student, met and decided that the Student would receive 3
hours per week of homebound instruction. The evidence shows that the decision was
made by a group of knowledgeable persons who based their decision on teacher reports
and consultation with outside specialists.

District staff stated that the Student received Social Skills at home after school during the
first semester of the 2003-2004 school year; however, they provided no explanation for
why the Student did not receive Social Skills instruction during the second semester of
the 2003-2004 school year, when he was in the Homebound Program. The District's
failure to provide Social Skills instruction during the second semester of the 2003-2004
school year constitutes a failure to implement the Student's IEP.

**Conclusion**

OCR determined that, because the IEP Committee, composed of knowledgeable persons,
made a considered decision, based on a variety of information, to provide the Student
with 3 hours per week of academic instruction, there is insufficient evidence to support a
finding of noncompliance with the regulations with regard to the allegation that the
Student was provided insufficient hours of academic instruction. OCR found, however,
that he was not provided Social Skills training during the second semester, as required by
his IEP. Therefore, the District was not in compliance with the regulations with respect
to the allegations. To resolve this allegation, the District agreed to undertake the
corrective actions described in the Voluntary Resolution Agreement attached.

b.    **Failed to Provide Mathematics Instruction**

The Complainant indicated that the Student did not receive appropriate mathematics
instruction while he was on homebound services.

Ms. Cassandra Williams
Page 8

**Findings of Fact**        *Exhibit: OCR-04-04-1296*

The evidence shows that the Student was to receive instruction in all academic courses
while he was in the Homebound Program, including mathematics. In a note dated
February 16, 2004, from the Complainant to District staff, the Complainant complained
that the Student needed a certified mathematics/algebra teacher. The homebound teacher
assigned to the Student also indicated that a certified mathematics teacher was needed for
the Student.    The District never responded to the request for a certified mathematics
teacher.

**Conclusion**

OCR has concluded that the District was not in compliance with the regulations with
respect to the provision of mathematics services in the homebound setting during the
2003-2004 school year.    To resolve this allegation, the District agreed to undertake the
corrective actions described in the Voluntary Resolution Agreement attached.

**c.  Required the Complainant to teach the Student**

The Complainant alleged that she was forced to serve as the Student's teacher during the
Homebound Program.

**Findings of Fact**

The Complainant acknowledged that the homebound teacher gave the Student
assignments to complete, reviewed the assignments with him, and assisted him to
complete the work. District staff stated that the Complainant was never asked to serve as
the Student's instructor. The Complainant did not provide an explanation of the type of
assistance she provided to her son.

**Conclusion**

OCR has determined that there is insufficient evidence to establish that the District is in
noncompliance with the regulations with respect to the instructional assistance provided
by the Complainant to her son while he was in the Homebound Program.

**d.    Failed to Monitor/Communicate With Parents Regarding the Student's
Progress**

The Complainant alleged that the District failed to monitor the Student's IEP in a timely
manner and to communicate with her about his progress.

**Findings of Fact**

Ms. Cassandra Williams
Page 9                    $Exhibit: OCR-04-04-1296$

The Complainant stated that State law requires the District to ensure that IEPs are being monitored. According to the Complainant, the District failed to provide information relative to the Student's progress, and failed to monitor the effectiveness of the proposed interventions that were employed. The Complainant stated that a reporting form which the District was supposed to prepare was left blank.

District staff stated that special education teachers are required to provide students with nine-week progress reports concerning their IEP goals and benchmarks and increased feedback as needed. The Student's IEP for the 2003-2004 school year calls for progress reports to be provided to the parents.

District staff stated that the case manager was responsible for the monitoring and reporting functions. Although the case manager stated that he monitored the Student's program and provided weekly reports, there is evidence that the case manager's files of monitoring reports were incomplete. The District's Zone Coordinator acknowledged that there were problems with the recordkeeping at LHS and that some of the records were missing. She stated that the Student was not adversely affected by the situation, due to the constant communication between the case manager and the Complainant.

**Conclusion**

OCR found that the Student's IEP required the provision of progress reports on the Student and communication with the parents. OCR found insufficient evidence to support a conclusion that incomplete records resulted in the denial of FAPE.

### e. Failed to Provide Related Services

The Complainant alleged that the District failed to provide the Student with related services, i.e., therapeutic recreation, community, and counseling services.

**Findings of Fact**

The Student's 2003-2004 IEP did not include related services, (therapeutic recreation, community, and counseling services.) Under transition goals, the IEP indicates that the part of the Student's course of study that focuses on transition needs is in regular general education classes with support services. The IEP also stated that he needed instruction and related services, but did not need community experiences, development of employment and other post-school adult living objectives, including vocational evaluation and personal management. Therefore, OCR found no reason to believe that the District's failure to provide these services constituted failure to provide individualized services based on his needs. Therefore, the District was not required to provide these services.

**Conclusion**

Ms. Cassandra Williams
Page 10

*Exhibit: OCR-04-04-1296*

Based on this information, OCR has determined that the evidence is insufficient to show that the District was in noncompliance with the regulations with respect to the provision of the identified services.

## Allegation 5

The Complainant alleged that the District failed to provide the Complainant with required parental training.

### Finding of Facts

In accordance with <u>Lee v. Macon County</u>, the District developed a plan that calls for parent information workshops on various topics. OCR found, in a previous investigation, that the District held one parent training meeting per month; that it provided documentation of workshop notices for topics; and that the District advertised workshop offerings in the newspaper and on television. OCR interviewed District staff that confirmed that the District currently provides training for parents.

### Conclusion

OCR found insufficient evidence to support a finding that the District is in noncompliance with the regulations with respect to this issue.

## Allegation 6

The Complainant alleged that the District failed to provide a response to her complaint about services at Lee High School, and failed to inform her about OCR and other options for filing a grievance or complaint.

### Findings of Fact

The Complainant stated that she wrote letters in March 2004, addressed to various District officials and administrators, including the Superintendent; Section 504 Coordinator; ADA and Title VI Coordinator; Special Education Zone Coordinator; and the State Special Education Director. OCR's investigation confirmed that the Complainant sent letters of request for various services to several District officials during the second semester of the 2003-2004 school year. The evidence also shows that because the letters were determined to be written requests for assistance, the District did not consider them to be grievances. The District's Special Education Coordinator responded in writing to each of the Complainant's requests for student services in the spring of 2004.

OCR found that the District advised the Complainant of the procedural requirements for raising disagreement with the special education process as well as filing for a due process hearing.

Ms. Cassandra Williams
Page 11

**Conclusion**          *Exhibit: OCR: -04-04-1296*

Based on this information OCR determined that the evidence is insufficient to show that the District is in noncompliance with the regulations.

## Allegation 7

The Complainant alleged that the District failed to issue a prior written notice of intent regarding placement at Lee High School and providing the Student with a free appropriate public education.

### Findings of Fact

The Complainant stated that the District's response to her letters of request dated March 11, 19, and 25, 2004, did not follow the requirements of the Prior Written Notice of Intent (Form). The Form is to be given to the parent/student at the IEP meeting when the IEP Team decides not to evaluate the student, when the least restrictive environment is changed at an IEP meeting in which the parent/student is not in attendance, and when the IEP Team decides not to provide a service requested by the parent. OCR found that the Form is used when requests, referrals or other actions are being denied.

OCR's review of the requests made by the Complainant and the District's response shows that the conditions identified by the State for the use of the Form did not pertain to the Complainant's requests. The District denied that its failure to complete the Form prevented the Complainant from filing requests or complaints. OCR also found that at the beginning of the 2003-2004 school year, when a self-contained setting was under discussion, the District appropriately documented its denial on the Form.

### Conclusion

Based on this information, OCR has determined that the evidence is insufficient to establish that the District is in noncompliance with the regulations regarding this allegation.

## Allegation 8

The Complainant alleged that the District failed to provide the Student (and other black students) with access to the SLD self-contained program at Lee High School, which is provided to white students, resulting in differential treatment of students based on race.

### Findings of Fact

The educational settings for SLD students range from full-inclusion with pullout and support to separate day school or homebound services. An SLD student working on a regular diploma would generally be served in a regular classroom. Students with secondary conditions might be recommended with other more appropriate settings.

Ms. Cassandra Williams
Page 12

*Exhibit: OCR-04-04-1296*

For the 2003-2004 school year, the District reported that 1,596 students were enrolled at Lee High School, of whom 690 (43%) were white and 906 (57%) were nonwhite. OCR found that 121 students were enrolled in the SLD program, 43 (36%) of the students were white; 75 (62%) of the students were black; 1 of the students was Hispanic, and 1 of the students was classified as Other. OCR's investigation showed that there were no SLD self-contained classrooms at Lee High School during the 2003-2004 school year.

The District's program for SLD students who are pursuing a regular diploma requires the student to receive services in the regular education setting, taught by a regular education teacher with support services. An exception was a Graduation Examination preparation class that had seven students with disabilities, five of whom were white (71%) and two of whom were black (29%). Lee High School's Special Education Facilitator stated that the students were placed in the class based on their prior test results. OCR found no evidence that black students were barred from these special classes based on their race.

## Conclusion

OCR found insufficient evidence to support a finding that the District is in noncompliance with the regulations with respect to denying the Student placement in the self-contained SLD class at Lee High School on the basis of race, as alleged.

## Allegation 9

The Complainant alleged that the District retaliated against the Student because she complained to the District about homebound services. Specifically, the Student's completed work assignments were lost and the District provided her with false reports about her request for placing the Student at Lee High School.

## Participation in a Protected activity and Knowledge of a Protected Activity

OCR found that the Complainant participated in a protected activity and the District had knowledge of the protected activity. On March 11, 19, and 25, 2004, the Complainant sent correspondence to District and State employees complaining about problems with homebound services and requesting that the Student receive testing accommodations, and be placed in a self-contained SLD class at Lee High School. OCR determined that the Complainant's correspondences constituted protected activities under Section 504 and Title II. Several District officials acknowledged that they were aware that the Complainant had submitted correspondence requesting services.

## Alleged Adverse Action

Regarding the missing assignments, the Complainant reported that prior to her initial letter dated March 11, 2004 there were no problems with the Student receiving his school assignments. She stated that, after her initial letter, there had been no work assignments for the Student for a couple of weeks, and the Student was unable to receive services

Ms. Cassandra Williams
Page 13

*Exhibit: OCR – 04 – 04 – 1296*

from the homebound teacher. According to the Complainant, the homebound teacher stated that the homework was submitted to the appropriate District staff, but the District representatives at the LHS, said that they did not get the work. OCR found that the homework could have been inadvertently misplaced.

In a letter dated April 6, 2004, the Director of Special Education provided information to the Complainant about the Student's placement at the LHS instead of Lee High School, the school she requested. District staff stated that LHS was identified in error because this was the most recent school the Student attended.

OCR has determined that the issue of missing assignments and notice of school placement given to the Complainant do not constitute adverse actions resulting in harm to the Complainant. District staff stated that they were aware of the situation regarding the homework, and thought that the situation could easily have arisen because of the number of students involved in the Homebound Program and the transmission of papers back and forth between several parties. District staff stated that this situation was not limited to students whose parents filed complaints. This had also occurred for students whose parents had not engaged in protected activities. Additionally, the Student's assignments were missing for a maximum of two weeks, the District responded to the complaint about the Student's homework, and his homework was eventually found.

OCR does not consider the incidents identified by the Complainant to be adverse actions resulting in harm to the Student or Complainant.

**Conclusion**

OCR found no evidence of adverse action and determined that the evidence is insufficient to establish that the District is in noncompliance with the regulations, as alleged.

*            *            *

This concludes OCR's consideration of this matter. The Voluntary Resolution Agreement and Monitoring Requirements are attached.

If you have questions or concerns regarding OCR's determination, please contact Ms. Ella Alexander, Equal Opportunity Specialist, at 404-562-6434, or me, at (404) 562-6398.

Sincerely,

Thomasina Brown-Nolan
Acting Compliance Team Leader

cc: Enclosures

Exhibit: OCR - 04 - 04 - 1296

### Resolution Agreement
### Montgomery County School District
### Complaint #04-04-1296

In order to voluntarily resolve the referenced complaint filed with the Office for Civil Rights (OCR), the Montgomery County School District (District) agrees to implement this Resolution Agreement (Agreement). The Agreement addresses the provision of free appropriate public education (FAPE) services to the Student named in the complaint regarding homebound instruction. The Agreement reflects the voluntary actions to be taken by the District to address OCR's investigative findings pursuant to Section 504 of the Rehabilitation Act of 1973 (Section 504) and Title II of the Americans with Disabilities Act of 1990 (Title II), which prohibit discrimination on the basis of disability.

## Corrective Actions

- By January 31, 2005, the District will provide to teachers and administrators involved in the IEP process, training and/or technical assistance on the development of appropriate IEPs based on the individual needs of the students when changing students' placement from a regular school to a homebound setting.

- By January 31, 2005, the District will evaluate the Student to determine his need for compensatory services with respect to Social Skills and Mathematics instructional services. If the District determines that the Student was not provided instruction required by his IEP in the areas of Social Skills and Mathematics during the second semester of the 2003-2004 school year, compensatory educational services will be provided for these subjects prior to his graduation from high school. This will include removing failing grades in these subject areas from the Student's high school transcript, and providing the Student the opportunity to retake Mathematics without penalty.

## Monitoring Requirements

- By April 25, 2005, the District will submit to OCR a copy of the training syllabus, announcements, technical assistance presentation, list of attendees, and/or other information associated with the District's efforts to provide to teachers and administrators involved with SLD students, information regarding appropriate IEP development for a change in placement from the regular school to the homebound setting.

- By April 25, 2005, the District will submit to OCR a copy of the IEP Committee decision with respect to the amount of compensatory Mathematics and Social

Resolution Agreement
Page 2

Exhibit: OCR -04- 04 - 1296

Skills instruction to be provided to the Student.   If services are deemed necessary, the District will provide a copy of the plan or schedule for the provision of such services, and a copy of the schedule which shows when such services were provided.

This Agreement is effective immediately upon signature by the District superintendent or his/her designee.

_____

Dr. H. Clinton Carter
Superintendent
Montgomery County School District

10/25/04
Date